# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., | : : : : : : : : : : | |
| Plaintiffs. | : : | |
| v. | : : | Civil Action No. _____ |
| JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police, | : : : : : : : : | |
| Defendants. | : | |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR <u>EXPEDITED INJUNCTIVE RELIEF</u>

OF COUNSEL:
Joseph G.S. Greenlee
National Rifle Association of
  America – Institute for Legislative
  Action
11250 Waples Mill Road
Fairfax, VA  22030

Francis G.X. Pileggi (No. 2624)
Keith A. Walter (No. 4157)
LEWIS BRISBOIS BISGAARD & SMITH LLP
500 Delaware Ave., Suite 700
Wilmington, DE 19801
(302) 985-6000
Francis.Pileggi@LewisBrisbois.com
Keith.Walter@LewisBrisbois.com

*Counsel for Plaintiffs*

Dated:  November 3, 2025

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   SUMMARY OF ARGUMENT ................................................................................... 4

III.  STATEMENT OF FACTS .......................................................................................... 6

IV.   LEGAL STANDARD.................................................................................................. 10

V.    ARGUMENT............................................................................................................... 11

    A.  Plaintiffs are Likely to Succeed on the Merits Because Absent the Infrastructure, the Permit Bill Operates as a Total Handgun Ban ............................................... 11

    B.  Plaintiffs Will Suffer Irreparable Harm that Threatens to Moot the Case Without an Injunction ...................................................................................................... 14

    C.  Public Interest and Balance of Hardships Strongly Favor Plaintiffs .................... 17

VI.   CONCLUSION............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) ...................................................................................2, 10, 16

*Del. State Sportsmen's Ass'n v. Garvin*,
  2020 WL 6813997 (Del. Super. Nov. 18, 2020)....................................................................13

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)...............................................................................2, 4, 11, 12, 14

*Drummond v. Robinson Twp.*,
  9 F.4th 217 (3d Cir. 2021) ................................................................................................4

*Hope v. Warden York Cnty. Prison*,
  972 F.3d 310 (3d Cir. 2020)............................................................................................10

*K.A. v. Pocono Mt. Sch. Dist.*,
  710 F.3d 99 (3d. Cir. 2013) ............................................................................................17

*Lara v. Comm'r Pa. State Police*,
  125 F.4th 428 (3d Cir. 2025) ..........................................................................................11

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010)...........................................................................................................4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022).........................................................................................................4, 11

*Range v. AG United States*,
  124 F.4th 218 (3d Cir. 2024) ..........................................................................................11

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017)..........................................................................................2, 10

*Rigby v. Jennings*,
  630 F. Supp. 3d 602 (D. Del. 2022).................................................................................14

*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010)................................................................................................4

**Constitution and Statutes**

U.S. Const. amend. II................................................................................................................1, 4

11 *Del. C.* § 1448 ........................................................................................................ *passim*

11 *Del. C.* § 1448A ...................................................................................................... *passim*

11 *Del. C.* § 1448D ...................................................................................................... *passim*

Del. Code Ann. tit. 29, § 10115(a) ........................................................................................ 12

Del. Code Ann. tit. 29, § 10102 ............................................................................................ 12

**Other Authorities**

Fed. R. Civ. P. 65 ................................................................................................................... 1

## I.      INTRODUCTION

The State enacted a law eighteen months ago prohibiting the purchase and sale of handguns without a permit and imposing criminal penalties for noncompliance. Yet it has failed to establish the infrastructure necessary to issue  permits by the date the law is to be enforced. Plaintiffs seek expedited injunctive relief pursuant to Federal Rule of Civil Procedure 65 to enjoin Defendants from enforcing the statute.

Senate Substitute 1 for Senate Bill 2 ("the Permit Bill") was enacted on May 16, 2024.[1] The Permit Bill requires Delaware citizens, including Plaintiffs, to obtain a permit to purchase commonly used handguns and imposes criminal penalties for noncompliance. This violates the Second Amendment.[2] The State has also failed to put the necessary infrastructure in place to enable Plaintiffs[3] to obtain the required permit. As a result, when the Permit Bill becomes enforceable on November 16, 2025, it will result in an unconstitutional statewide total ban on the purchase and sale of handguns for an indeterminate amount of time. Plaintiffs therefore seek relief to immediately halt the Permit Bill's planned November 16, 2025 enforcement date, when criminal penalties will be applicable.

A party seeking expedited injunctive relief must make a threshold showing that there is (1) a likelihood of success on the merits; (2) a prospect of irreparable injury if the injunction is not granted; (3) the balance of harms favors issuance of the injunction; and (4) that the injunction is in

---

[1] A copy of the Permit Bill is attached at Ex. A to Plaintiffs' Complaint and is also available at https://legis.delaware.gov/BillDetail/130284.

[2] Plaintiffs make other claims in their Complaint that are not the subject of this narrow request for injunctive relief.

[3] All unconstitutional requirements that the Permit Bill places upon Plaintiffs also apply to other similarly situated Delawareans and further references to violations to Plaintiffs in this brief incorporate all similarly situated Delawareans.

166395300.1                                      1

the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).  Plaintiffs meet each of these threshold prerequisites.

Plaintiffs are likely to succeed on the merits because the Permit Bill's November 16, 2025 commencement date, coupled with the State's failure to have the infrastructure in place to issue the required permits to buy a handgun, amounts "to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society…"  *District of Columbia v. Heller,* 554 U.S. 570, 628-29 (2008). The Supreme Court has long held that total bans of handguns "fail constitutional muster." *Id*.

With respect to irreparable harm, the Third Circuit in *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec*., 108 F.4th 194, 203-05 (3d Cir. 2024), recently held that because irreparable harm is not presumed in Second Amendment challenges, plaintiffs, relying on the presumption, did not demonstrate irreparable harm based on the "scant" evidence before the Court. The Court made clear, however, it was not "hold[ing] that Second Amendment harms, or constitutional harms generally, cannot be irreparable." *Id.* at 205. The facts here are distinguishable.

The instant record plainly demonstrates Plaintiffs will suffer irreparable harm absent injunctive relief.  First, unlike the plaintiffs in *Del. State Sportsmen's Ass'n.,* Plaintiffs do not rely on a presumption of irreparable harm. Second, the record here is replete with evidence demonstrating imminent and irreparable injury. For example, the Permit Bill's impending total ban on handgun purchases and sales deprives Plaintiffs of the ability to protect themselves and their families for an indeterminate duration and imposes criminal liability for buying or selling a handgun without a permit—but the State has not implemented the infrastructure needed to issue the required permits.  It is difficult to imagine a harm more irreparable than the loss of the ability

166395300.1                                                    2

to defend one's life, and the lives of loved ones for any period of time. That loss in this matter is open-ended because the State cannot establish an exact date that an eligible person will be able to obtain and possess the permit needed to buy a handgun. The net result of this Kafkaesque dystopia is a total ban on the sale or purchase of handguns.

There is additional irreparable injury, particularly for certain of the Plaintiffs who sell handguns because the Permit Bill also makes the purchase and sale of common handguns without a permit a crime. Accordingly, the indefinite ban on handgun sales—until permits are available— leaves Plaintiff-sellers with a Hobson's choice: (1) abide by the State's ban on handgun sales and go out of business; or (2) sell handguns without the required, but unavailable permits, and go to jail and pay fines.[4]

Injunctive relief to stop the planned November 16, 2025 commencement date of the Permit Bill is therefore necessary to preserve the status quo and prevent the irreparable injury that will result from Plaintiffs' inability to defend themselves and their families, their loss of liberty, their freedom of commerce, or inability to sell firearms in their stores. A favorable final judgment will be useless if Plaintiffs are dead because they cannot defend themselves, or in jail, and/or out of business as a result of the statewide total ban on handgun purchases and sales.

Finally, the balance of harms and public interest factors also weigh in favor of injunctive relief. The State is not harmed from being restrained from enforcing an unconstitutional law, whereas Plaintiff face ongoing deprivation of fundamental rights. The public interest likewise favors an injunction as the public always has a strong interest in the protection of constitutional rights.

---

[4] Even in a scenario where all requisite processes and procedures needed to implement the Permit Bill are in place, the statute does not provide any consequences, remedy or cure if the State fails to issue the permit within the mandated 30-day timeframe.

## II.   SUMMARY OF ARGUMENT

The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. The United States Supreme Court has ruled that the Second Amendment protects the fundamental right to self-defense inside and outside the home. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022). As "the quintessential self-defense weapon," the Supreme Court has held that a total ban on handguns "fail[s] constitutional muster" under any standard. *Heller*, 554 U.S. at 628-29.

The Third Circuit recognizes that this fundamental right necessarily involves the right to not only possess, but to purchase commonly used arms such as handguns. *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (rev'd on other grounds by *Bruen*, 597 U.S. 1) ("Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment."); *Drummond v. Robinson Twp.*, 9 F.4th 217, 224, 227 (3d Cir. 2021) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 704) ("This 'implies a corresponding right to acquire and maintain proficiency' with common weapons.").

The Permit Bill becomes enforceable no later than November 16, 2025, just days from now.[5] It bans law-abiding citizens from purchasing handguns for self-defense and other lawful purposes without a permit. *See* 11 *Del. C.* § 1448D.  Therefore, Delawareans, including Plaintiffs,

---

[5] Section 5 of SS 1 for SB 2 provides that it is to be implemented the earlier of the following: "(1) Eighteen months from the date of the Act's enactment [or] (2) The date of publication in the Register of Regulation of a notice by the Director of the State Bureau of Identification that the necessary processes have been established for implementation of the handgun qualified purchaser permit under Section 1 of this Act." Governor Carney signed the Permit Bill into law on May 16, 2024 and Plaintiffs are unaware of any notice by the Director that *all* the necessary processes have been established for implementation.  Accordingly, SS 1 for SB 2 will become enforceable on November 16, 2025, which is 18 months from the date of enactment.

166395300.1                                         4

who wish to purchase a handgun after November 15th, will need to have the required permit.[6] The Permit Bill also criminalizes permit-less purchase and sale of handguns. It purports to authorize the Delaware State Police or a local law-enforcement agency to "take action to ensure surrender or removal" of any permit-less handguns. *Id.* § 1448D(l)(3). It also provides for criminal prosecution of "transferors" that sell or deliver a handgun to a person without a permit. *Id.* § 1448A(h).

Further, although the Permit Bill empowered the State Bureau of Investigation ("SBI") to "adopt regulations to administer, implement and enforce [the Permit Bill]" nearly 18 months ago, the State has failed to put in place all the necessary infrastructure for Plaintiffs to obtain a permit. *Id.* §1448D(q). In their feckless rush to implement the Permit Bill on November 16th, the Defendants have also either knowingly ignored, or failed to account for the fact that regulations that the State and/or SBI have deemed necessary to effectuate the permit application process are subject to Delaware's Administrative Procedures Act ("APA"). The APA's regulation process takes several months to complete and cannot be completed by November 16, 2025 without ignoring the law.

By requiring a permit to buy or sell a handgun but failing to provide the means for Plaintiffs to obtain it by the November 16th commencement date, the State has effectively instituted a statewide total ban on the purchase and sale of handguns, in violation of the Second Amendment. The emergency relief that Plaintiffs seek is therefore necessary to preserve the status quo, prevent

---

[6] Although the Permit Bill provides that "[a] person who holds a valid license to carry concealed deadly weapons. . .is not required to apply for a handgun qualified purchaser permit under this section before purchasing a handgun," elsewhere it states "[a] transferor may not sell, transfer, or deliver from inventory a handgun to any other person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, unless the buyer or transferee has a valid handgun qualified purchaser permit issued by the State Bureau of Identification under §1448D of this title"—creating a textual contradiction. *See* 11 *Del. C.* §§ 1448D(d)(1), 1448A(a)(2).

the irreparable injury that will result from this unconstitutional total ban, and ensure that the action is not rendered useless by Plaintiffs' death, jailing, or, in the case of Plaintiff-sellers, being unable to sell guns in their business.

### III.  STATEMENT OF FACTS

The Permit Bill, set to be enforced beginning on November 16, 2025, bans law-abiding Delawareans, including Plaintiffs, from purchasing handguns for self-defense and other lawful purposes without a permit, and criminalizes permit-less purchase and sale of handguns. *See* 11 *Del. C.* §§ 1448A(a)(2), 1448A(h).

The permit applications must be made available by the SBI and licensed dealers, and completed applications must be submitted to the SBI. 11 *Del. C.* §§ 1448D(e), 1448D(h).[7] The SBI is charged with "investigating" the application. *Id.* § 1448D(h). This "investigation," at minimum, consists of the following:

(1) The SBI shall take the fingerprints of each person who applies for a handgun qualified purchaser permit  and compare the fingerprints with any records of fingerprints in this State. The SBI shall conduct a search of the  Delaware Criminal Justice Information System to determine if the applicant is prohibited under the law of this State or federal law from purchasing or possessing a firearm. The SBI shall submit the person's fingerprints to the Federal  Bureau of Investigation with a request that a search of the National Instant Criminal Background Check System be  conducted.

(2)a. In investigating the application, the SBI shall contact the local law-enforcement agencies of the county or municipality in which the person resides and inquire as to any facts and circumstances relevant to the person's  qualification for a handgun qualified purchaser permit.

b. If an applicant has resided in the applicant's county or municipality of residence for less than 5 years,  the SBI shall contact the local law enforcement agency of each county or municipality in which the applicant has  resided for the previous 5

---

[7] The Permit Bill requires an applicant to provide an exhaustive list of information of questionable justification, including race, ethnicity, national origin, and a physical description including distinguishing characteristics. 11 *Del. C.* § 1448D(d)(1).

years and inquire as to any facts and circumstances relevant to the person's qualification for a handgun qualified purchaser permit.

*Id.* § 1448D(h)(1)-(2)(b).

Applicants must also must attend a certified "firearms training course," and fire at least 100 rounds of ammunition. *Id.* § 1448D(f)(4), (f)(4)(f). The State, SBI and the Delaware State Police have decreed that to be eligible to administer the certified "firearms training course" individual and/or entity "firearms instructors" must separately register with and be approved by the Delaware State Police and SBI. The Delaware State Police have issued so-called "Firearm Training Couse Guidelines" for prospective firearms instructors that contain requirements for acceptance as a firearms instructor that are not found in the Permit Bill.

These "guidelines" are actually regulations subject to the APA and include mandates that:

> C. Training courses must be approved by SBI prior to conducting training for a handgun qualified purchaser permit.
> D. Firearms instructors must be approved by SBI prior to instructing training for a handgun qualified purchaser permit.
> E. Firearms instructors must submit a completed application in the Permit to Purchase Firearms Instructor Portal to obtain approval as a certified firearms instructor. The following supporting documents must also be submitted:
> 1. A copy of a valid firearms instructor certificate showing the expiration date.
> 2. The certificate must be from a nationally recognized organization that certifies instructors on firearms training or from a law enforcement agency that meets the Delaware POST standards for firearms instructors.
> 3. An instructor identification card
> 4. Training course syllabus

*See* Ex. A, a copy of the Firearm Training Course Guidelines, attached to the Declaration of Keith Walter in Support of Plaintiffs' Motion for Expedited Injunctive Relief ("Walter Decl.) at § IV.C.–E.4.

The Permit Bill's firearms training course also mandates the following instruction:

The firearms training course must consist of at least all of the following:

a.     Instruction regarding knowledge and safe handling of firearms.

b.     Instruction regarding safe storage of firearms and child safety.

c.     Instruction regarding knowledge and safe handling of ammunition.

d.     Instruction regarding safe storage of ammunition and child safety.

e.     Instruction regarding safe firearms shooting fundamentals.

f.     Live fire shooting exercises conducted on a range, including the expenditure of a minimum of 100 rounds of ammunition.

g.     Identification of ways to develop and maintain firearm shooting skills.

h.     Instruction regarding federal and state laws pertaining to the lawful purchase, ownership, transportation, use, and possession of firearms.

i.     Instruction regarding the laws of this State pertaining to the use of deadly force.

j.     Instruction regarding techniques for avoiding a criminal attack and how to manage a violent confrontation, including conflict resolution.

k.     Instruction regarding suicide prevention.

11 *Del. C.* § 1448D(f)(4)(a)–(k).

The Permit Bill purports to allow the State 30 days to review and approve or deny an application. § 1448D(h). There is, however, no provision, or any other procedure, that provides any relief or recourse for a permit applicant should the State fail to issue the permit within 30 days from the receipt of the application.

Now, on the eve of the commencement date of the Permit Bill, the State has failed to put the personnel and infrastructure in place necessary to obtain a permit. For example on October 17, 2025, the Delaware State Police made an announcement on its website regarding the upcoming launch of the Permit Bill. *See* Walter Decl., Ex. B. While the announcement "encourages Delaware residents planning to buy a handgun to visit the Permit to Purchase website to learn about the training and documentation requirements associated with the new law," the announcement notes that the registration link to apply for the required permit is "inactive."[8] *Id.* at page 2.

---

[8] As of at least October 31, 2025, the Delaware State Police "Permit to Purchase" website (https://dsp.delaware.gov/permit-to-purchase) has an active link to an application, but other sections of that website are not fully operational. For example, the "Link to Permit to Purchase regulations" includes a parenthetical that reads "to be developed." *See* Walter Decl., Ex. C at page 3.

166395300.1                 8

An October 6, 2025 email from Christopher Popp of the Delaware State Police to Federal Firearms Licensees in Delaware further confirms the necessary infrastructure to implement the Permit Bill is not in place. *See* Walter Decl., Ex. D.  In that email, Lieutenant Popp notes that the Firearm Transaction Approval Program ("FTAP") "has been delayed for some time…[due to] critical errors that needed to be addressed" and "[w]e don't want to put out a program that is not effective and make sure it's thoroughly tested thoroughly tested for accuracy." Lieutenant Popp also states that "the testing period will last a few weeks and we will not release the program until we are 100% confident in its accuracy."

As of the filing of this motion, it appears then, that the State and its agencies do not currently possess the ability to grant a permit by the date that enforcement will commence. It would also appear that the already unconstitutional 30-day waiting period Plaintiffs face for obtaining a permit, and thus for buying a handgun, will in reality be far longer and even indefinite.  Plaintiffs then also have no recourse to challenge these demonstrable delays.

Further, in the State's frantic attempt to "finalize" several regulations that it or its agencies deem necessary to implement the Permit Bill, including those regarding firearm instructor approval, they have either knowingly ignored or failed to account for APA procedure, rendering those regulations unenforceable on November 16th.[9] It is also unclear how the extra-statutory

---

[9] The "Firearm Training Course Guidelines" are only one such regulation subject to the APA Plaintiffs are aware of that the State and its agencies have ignored to date.  Plaintiffs are aware of the "guidelines" because they have been posted online by the Delaware State Police. Given the State's poor planning and the fact that the Permit Bill empowered SBI" to "adopt regulations to administer, implement and enforce [the Permit Bill]," the State and its agencies will no doubt issue more eleventh-hour regulations disregarding the APA in order to give the appearance that the Permit Bill has been properly implemented—it has not been and cannot be if APA procedure has been ignored.

166395300.1                                          9

"Firearm Training Course Guidelines" and approval process are delaying the actual availability of "approved" training courses.

One "approved" firearms trainer reported on October 28, 2025, that he cannot offer a course until November 22, 2025, six days after the effective date. *See* Cris Barrish*, Ready or not, Delaware law requiring permit to buy handgun takes effect next month*, WHYY.ORG (https://whyy.org/articles/delaware-handgun-permit-law-background-check/) attached to the Walter Decl., Ex. E at page 4. In short, the State's infrastructural shortcomings and poor planning render permits unobtainable for Plaintiffs at the time of the Permit Bill's commencement date. Without a permit, the sale of purchase of handguns are effectively banned in Delaware.

## IV.    LEGAL STANDARD

A plaintiff seeking preliminary injunctive relief must make a threshold showing that there is (1) a likelihood of success on the merits and (2) a prospect of irreparable injury if the injunction is not granted. *Reilly v. City of Harrisburg*, 858 F.3d at 176.  These two factors are the "most critical." *Del. State Sportsmen's Ass'n*, 108 F.4th at 202 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  In addition, "the district court . . . should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.*  These factors merge, where, as here, the Government is the opposing party. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020).

## V.    ARGUMENT

### A. Plaintiffs are Likely to Succeed on the Merits Because Absent the Infrastructure,  the Permit Bill Operates as a Total Handgun Ban

In reaffirming *Heller* and rejecting a "means-end scrutiny" evaluation of a Second Amendment claim, the Supreme Court held, in *Bruen*, 597 U.S. at 24, that:

> …[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen's* reaffirmation of *Heller* "announced a new two-step analytical approach.  At the first step, a court determines whether 'the Second Amendment's plain text covers an individual's conduct[.]'  If the text applies to the conduct at issue, 'the Constitution presumptively protects that conduct.'" *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 434 (3d Cir. 2025) (internal citations omitted).

It is undisputed that Plaintiffs as ordinary Delawareans are part of "the people." *Bruen*, 597 U.S. at 31; *see also Range v. AG United States*, 124 F.4th 218, 226 (3d Cir. 2024) (quoting *Heller*, 554 U.S. at  580) ("[*Heller*] explained that "the people" as used throughout the Constitution 'unambiguously refers to all members of the political community, not an unspecified subset.'"). It is also undisputed that "handguns are weapons 'in common use' today for self-defense." *Bruen*, 597 U.S. at 32.

The Supreme Court's "historical analysis sufficed to show that the Second Amendment did not countenance a 'complete prohibition' on the use of 'the most popular weapon chosen by Americans for self-defense in the home.'"—the handgun.  *Bruen,* 597 U.S. at  22 (quoting *Heller*,

554 U.S. at 629). It remains, that a total ban on handguns "fail[s] constitutional muster" under any standard. *Heller*, 554 U.S. at 628-29.

As of this filing, the State has not put in place the infrastructure necessary for an applicant to complete the training required to be granted a permit, or for the State itself to grant a permit, by the November 16, 2025 enforcement date, while still requiring that an individual have an unobtainable permit in order to purchase a handgun.

The State and SBI has also failed to initiate the necessary, months-long APA procedures to pass regulations it and its agencies have determined are necessary to the Permit Bill's implementation, demonstrating that the Permit Bill is nowhere close to functional. Under the APA, [w]henever an agency proposes to formulate, adopt, amend or repeal a regulation," that agency:

> [S]hall describe the nature of the proceedings including a brief synopsis of the subject, substance, issues, possible terms of the agency action, a reference to the legal authority of the agency to act and reference to any other regulations that may be impacted or affected by the proposal

Del. Code Ann. tit. 29, § 10115(a).

This notice to the public also requires that the agency

> …[S]tate the manner in which persons may present their views: (i) if in writing, of the place to which and the final date by which such views may be submitted; or (ii) if at a public hearing, the date, time and place of the hearing. If a public hearing is to be held, such public hearing shall not be scheduled less than 20 days following publication of notice of the proposal in the Register of Regulations.

*Id*.

The State's and its agencies' mad dash to implement the means and infrastructure to grant permits has led to the promulgation of numerous regulations (even if mislabeled with another name), subject to the APA—without following APA procedure, including regulations regarding firearms training courses. "Agency" is defined in the APA as "any authority, department, instrumentality, commission, officer, board or other unit of the state government authorized by

166395300.1                                                12

law to make regulations, decide cases or issue licenses." Del. Code Ann. tit. 29, § 10102. The APA

therefore applies to SBI and the Delaware State Police. "Regulation" is defined in the APA as "any

statement of law, procedure, policy, right, requirement or prohibition formulated and promulgated

by an agency as a rule or standard, or as a guide for the decision of cases thereafter by it or by any

other agency, authority or court." *Id.*

The "Firearm Training Course Guidelines" for prospective firearms instructors issued by

SBI and the Delaware State Police are "regulations" under the APA that consist of "procedure,

policy, right, [and/or] requirement" formulated by an agency. The Permit Bill does not provide for

application and approval for firearm trainers. The SBI and Delaware State Police have, then, taken

it upon themselves to issue regulations governing Firearm Training Courses, including that:

> C.    Training courses must be approved by SBI prior to conducting training for a handgun qualified purchaser permit.
> D.    Firearms instructors must be approved by SBI prior to instructing training for a handgun qualified purchaser permit.
> E.    Firearms instructors must submit a completed application in the Permit to Purchase Firearms Instructor Portal to obtain approval as a certified firearms instructor.  The following supporting documents must also be submitted:
> 1.    A copy of a valid firearms instructor certificate showing the expiration date.
> 2.    The certificate must be from a nationally recognized organization that certifies instructors on firearms training or from a law enforcement agency that meets the Delaware POST standards for firearms instructors.
> 3.    An instructor identification card
> 4.    Training course syllabus

*See* Walter Decl., Ex. A at § IV.C.-E.4. (2025).

The SBI and the Delaware State Police may not promulgate these regulations regarding

Firearms Training Courses required to obtain a permit without observing the APA's months-long

comment and review process. *See, e.g., Del. State Sportsmen's Ass'n v. Garvin*, 2020 WL 6813997,

at *10 (Del. Super. Nov. 18, 2020) (Holding that DNREC cannot implement extra-statutory

"policies and requirements, including the disputed language in the Hunting Guide, without observing the comment and review process of the APA.").

Plaintiffs are unaware of any notice or hearing, required by the APA, being held in relation to the "Firearm Training Course Guidelines" or any other regulation related to the Permit Bill. Absent such required notice and hearing the State and its agencies are either: (1) far behind on meeting their requirement to implement regulations necessary to establish the Permit Bill's infrastructure; or (2) they intend to defy the APA.

 The State's Permit Bill infrastructural shortcomings and failures result in an open-ended ban on the purchase and sale of handguns in the State of Delaware. The November 16, 2025 commencement date coupled with the above-referenced failures mean that Plaintiffs are required to apply for and be granted a permit in order to purchase a handgun, but the State is not in a position to grant any such permits.

The net result will be that Plaintiffs cannot legally buy or sell a handgun in Delaware on the commencement date for enforcement of the Permit Bill. One cannot exercise his right to keep something if he is prohibited from acquiring it. *See Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. 2022) (citing *Ezell v. City of Chicago*, 651. F.3d 684, 704 (7th Cir. 2011)) (holding that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use…"); *see also Heller*, 554 U.S. at 582. This total ban violates the Second Amendment.

### B. Plaintiffs Will Suffer Irreparable Harm that Threatens to Moot the Case Without an Injunction

The State's open-ended total handgun ban will cause irreparable harm to the Plaintiffs as detailed in the Declarations of the following Plaintiffs:  Thomas Neuberger, Jeff Hague (on behalf of the Delaware Sportsmen's Association, Inc. ("DSSA"), and Bruce Smith in support of Plaintiffs

Motion concurrently submitted herewith and fully incorporated herein by reference (hereinafter "Neuberger Decl.," "Hague Decl.," and "Smith Decl."). For example, Neuberger is a 78 year-old Delaware resident that does not presently own a handgun, but intends to purchase one shortly for self-defense after the Permit Bill's implementation on November 16th. *See* Neuberger Decl., ¶¶2, 19, 24, 25. Because of his age, area criminal statistics, and general civil unrest in this Country, he reasonably fears for his safety and the safety of his wife. *Id.*, ¶¶20, 21. Indeed, in the past, Neuberger has been threatened with physical harm due to his pro bono civil rights work. *Id.*, ¶20.

Jeff Hague is the current president of the DSSA, is aware of and spoken directly with several DSSA members who intend to purchase a handgun for self-defense and other lawful purposes after SB 1 for SB 2 is implemented on November 16, 2025. *See* Hague Decl., ¶¶4, 17. Some of those members do not presently own a handgun and some believe they cannot outrun or overpower a criminal if they or their loved ones are attacked. Hague Decl., ¶¶17.

Not being able to purchase a handgun for self-defense for any duration of time, let alone an unknown period of time that could very well be indefinite, puts Neuberger and those DSSA members who do not presently own a handgun at unnecessary risk of bodily harm and even death should they encounter an attacker wanting to harm them or their loved ones, or be put in a situation where such harm may occur such as an home invasion. It is hard to imagine a harm more severe and irreparable than one's life or the life of a family member.

The Permit Bill also causes irreparable injury to firearm sellers commonly known as FFLs. Smith is the owner of BKK Firearms ("BKK), a FFL. *See* Smith Decl., ¶2. Because of the indefinite handgun ban resulting from the implementation of the Permit Bill as described above, BKK will not be able to sell handguns, which make up 90 percent or more of its sales. *Id.*, ¶¶14-19. The Permit Bill also provides for criminal liability to those that sell or deliver a handgun to a person

without a permit upon its implementation. *See* 11 *Del. C.* § 1448A(h). Accordingly, if the implementation of the Permit Bill is allowed to go forward on November 16th, BKK and Smith will be left with two choices: (i) immediately stop selling handguns and go out of business; or (ii) keep selling handguns and be subject to significant criminal liability. Smith Decl., ¶19. Jeff Hague is also aware of and spoken with other FFLs facing the same outcome. *See* J. Hague Decl., ¶¶20-21. Bankruptcy and loss of liberty both constitute irreparable harm.

The Permit Bill also authorizes law enforcement to take action upon Plaintiffs for exercising their Second Amendment Rights, subjecting them to significant fines and incarceration. *See* 11 *Del. C.* § 1448D(l)(3). Such action results in additional irreparable harm to Plaintiffs. *See* Neuberger Decl., ¶30 ("As a practicing civil rights attorney, I cannot risk being prosecuted and having law enforcement "take action" against me if I were to violate the Permit Bill because that would adversely impact my ability to practice law and provide legal services to those underserved individuals I seek to represent.").

When the Permit Bill goes into force, Plaintiffs, their members, and other ordinary law-abiding citizens who reside in Delaware, will have their lives and the lives of their loved ones put in unnecessary jeopardy, and be subject to the loss of business, law enforcement action, criminal prosecution, incarceration, and loss of their Second Amendment rights because they wish to obtain a handgun. These harms cannot be compensated through monetary damages, and threaten to moot the case, thereby satisfying the Third Circuit's holding regarding irreparable harm set forth in *Del. State Sportsmen's Ass'n,* 108 F.4th at 201 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975)) (holding that irreparable harm may warrant injunctive relief where "…harm threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, 'for otherwise a favorable

final judgment might well be useless.'"). Thus, the entry of expedited injunctive relief is appropriate.

### C. Public Interest and Balance of Hardships Strongly Favor Plaintiffs

The remaining two factors also strongly favor injunctive relief. The public interest favors Plaintiffs as the "enforcement of an unconstitutional law vindicates no public interest." *K.A. v. Pocono Mt. Sch. Dist.*, 710 F.3d 99, 114 (3d. Cir. 2013) (citing *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law.")).

The balance of hardships also strongly favors Plaintiffs because Plaintiffs have demonstrated that they are suffering a deprivation of their constitutionally protected rights, under threat of prosecution, and also face the likelihood of being deprived of their ability to protect themselves and their homes.

## VI.    CONCLUSION

The Permit Bill becomes enforceable on November 16, 2025, but the State has failed to implement the necessary infrastructure to allow for (i) obtaining a permit or; (ii) completing mandated training requirements before a permit may be issued. Thus, the permit required to purchase or sell a handgun in Delaware cannot be obtained.

The result of this Kafkaesque dystopia amounts to an unconstitutional total ban on the purchase and sale of handguns as of November 16, 2025. Plaintiffs, therefore, request that the Court grant their motion for injunctive relief to enjoin the Permit Bill's planned November 16,

2025 commencement date for enforcement.

Respectfully submitted,

LEWIS BRISBOIS
    BISGAARD & SMITH LLP

OF COUNSEL:                              */s/ Francis G.X. Pileggi*
Joseph G.S. Greenlee                     Francis G.X. Pileggi (No. 2624)
National Rifle Association of            Keith A. Walter (No. 4157)
  America – Institute for Legislative    500 Delaware Ave., Suite 700
  Action                                 Wilmington, DE 19801
11250 Waples Mill Road                   (302) 985-6000
Fairfax, VA  22030                       Francis.Pileggi@LewisBrisbois.com
                                         Keith.Walter@LewisBrisbois.com

                                         *Counsel for Plaintiffs*

Dated:  November 3, 2025