# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; BRUCE C. SMITH; BRIDGEVILLE KENPO KARATE, INC. d/b/a BKK FIREARMS; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., <br><br> Plaintiffs. <br><br> v. <br><br> JOSHUA BUSHWELLER, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. WILLIAM CROTTY, in his official capacity as superintendent of the Delaware State Police, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : Civil Action No. _____ <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## DECLARATION OF JEFFREY W. HAGUE, PRESIDENT OF DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC., IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Jeffrey W. Hague, affirm the truth of the following representations:

1. I am the President of the Delaware State Sportsmen's Association, Inc., a Plaintiff in the above-titled action. I am over the age of 18, have personal knowledge of the facts and events referred to in this Declaration, and I am fully competent to testify as to the matters stated below.

166031276.1

2. I submit this Declaration in support of Plaintiffs' motion for temporary restraining order and accompanying brief.

3. I am a citizen of the State of Delaware, residing in Sussex County, Delaware.

4. I am the President and a member of the Delaware State Sportsmen's Association, Inc. ("DSSA"), one of the Plaintiffs in this lawsuit.

5. DSSA was founded in 1968 as the official state-level affiliate of the National Rifle Association of America, and its membership currently consists of approximately 4,500 individual members and constituent clubs.

6. I am aware that the State of Delaware enacted into law Senate Substitute 1 for Senate Bill 2 ("SS 1 for SB 2"), which requires a Delaware citizen to obtain a handgun qualified purchasing permit prior to purchasing a handgun.

7. I understand that SS 1 for SB 2 will be implemented on November 16, 2025.

8. I further understand that SS 1 for SB 2 provides for criminal liability to those that sell or deliver a handgun to a person without a permit upon its implementation.

9. As alleged in the Complaint, I believe that SS 1 for SB 2 violates the Second Amendment.

10. To my knowledge and based on information that I have seen, as of the date of this Declaration, the State has failed to put in place complete procedures for obtaining the handgun qualified purchaser permit required for the purchase of handguns.

11. As a result, I understand no one has been able to obtain the required permit and there is nothing to ensure anyone will be able to obtain the required permit prior to implementation of SS 1 for SB 2.

12. I also understand that the State failed to follow Delaware's Administrative Procedures Act regarding the guidelines and regulations it has created in connection with SS 1 for SB 2.

13. It is unknown, when, if ever, the State will have the full procedures for obtaining the required handgun qualified purchaser permit, created in compliance with Administrative Procedures Act, in place.

14. Therefore, upon implementation of SS 1 for SB 2 on November 16, 2025, there will effectively be a ban on handgun purchases for an infinite duration in Delaware.

15. As a result of the State's enactment of SS 1 for SB 2, coupled with its failure to implement complete procedures for obtaining the handgun qualified purchaser permit required under SS 1 for SB 2, members of DSSA will be irreparably harmed.

16. As the Supreme Court has stated, handguns are the quintessential self-defense weapon.

17. I am aware of and spoken directly with several DSSA members who intend to purchase a handgun for self-defense and other lawful purposes after SB 1 for SB 2 is implemented on November 16, 2025. Some of these members do not presently own a handgun and some believe they cannot outrun or overpower a criminal if they or their loved ones would be attacked.

18. Not being able to purchase a handgun for self-defense for any duration of time, let alone an unknown period of time, puts these members and their families at an increased risk of bodily harm and even death should they encounter an attacker wanting to do such harm or be put in a situation where such harm may occur such as an home invasion.

19. It is hard to imagine a harm more severe and irreparable than one's life or the life of a family member.

20. I am also aware of and spoken directly with several DSSA members that are sellers of firearms with a Federal Firearms License, commonly known as "FFLs." Many of these members have sold handguns that will be subject to SS 1 for SB 2, and intend to continue to do so after its implementation on November 16, 2025.

21. If the implementation of SS 1 for SB 2 is allowed to go forward on November 16, 2025, BKK, those members will be left with two choices: (i) immediately stop selling handguns and go out of business; or (ii) keep selling handguns and be subject to significant criminal liability, including prosecution for a felony.

22. Therefore, SS 1 for SB2 violates constitutional protections afforded to DSSA members as a purchaser and seller of handguns, and subjects them to immediate, irreparable injury.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 27, 2025

_____
Jeffrey W. Hague, DSSA President