## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.
MARTIN; WILLIAM R. HAGUE, JR.;
BRUCE C. SMITH; BRIDGEVILLE KENPO
KARATE, INC. d/b/a BKK FIREARMS;
DELAWARE STATE SPORTSMEN'S
ASSOCIATION, INC; and BRIDGEVILLE
RIFLE & PISTOL CLUB, LTD.,

        Plaintiffs.

      v.

JOSHUA BUSHWELLER, in his official
capacity as Cabinet Secretary, Delaware
Department of Safety and Homeland Security;
and COL. WILLIAM CROTTY, in his official
capacity as superintendent of the Delaware
State Police,

        Defendants.

Civil Action No. 1:25-cv-01341-MN

## BRIEF IN SUPPORT OF DEFENDANTS'
## OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED INJUNCTIVE RELIEF

Date:   November 10, 2025

*Of Counsel*:

FRESHFIELDS US LLP

Jennifer B. Loeb (*pro hac vice* forthcoming)
Austin R. Evers (*pro hac vice* forthcoming)
Lauren Kaplin (*pro hac vice* forthcoming)
Jacob Johnston (*pro hac vice* forthcoming)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (*pro hac vice* forthcoming)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants*

DELAWARE DEPARTMENT OF JUSTICE

Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Ian.Liston@delaware.gov
jennifer.aaronson@delaware.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

I.  THE STATUTE AND PLAINTIFFS' LAWSUITS ............................................. 1

II. DELAWARE'S PERMIT TO PURCHASE INFRASTRUCTURE ...................... 4

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT .................................................................................................................. 6

I.  PLAINTIFFS LACK STANDING TO SUE TO ENJOIN THE STATUTE. ....................... 6

II. PLAINTIFFS WHO CAN ALREADY GET PERMITS DO NOT NEED AN
INJUNCTION SO THEY CAN GET PERMITS. ...................................................... 8

III. PRELIMINARY INJUNCTIVE RELIEF IS NOT WARRANTED. ................................ 11

A.  Preliminary Injunctions Are Extraordinary Relief Not Appropriate Here .............. 11

B.  Plaintiffs Have Failed to Show Irreparable Harm ..................................................... 12

C.  Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits. ............ 15

D.  The Equities and the Public Interest Weigh in Defendants' Favor. .......................... 19

CONCLUSION ............................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **Page(s)**

*Acierno v. New Castle Cnty.*,
    40 F.3d 645, 653 (3d Cir. 1994).................................................................................13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................................7

*Colo. Outfitters Ass'n v. Hickenlooper*,
    823 F.3d 537 (10th Cir. 2016) .................................................................................8

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
    No. 1:22-cv-00951 (D. Del. Jul 20, 2022) ..............................................................12

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
    108 F.4th 194 (3d Cir. 2024), .......................................................................... *passim*

*Del. State Sportsmen's Ass'n v. Garvin*,
    2020 WL 6813997 (Del. Super. Nov. 18, 2020)......................................................11

*DeMatteis v. RiseDelaware Inc.*,
    315 A.3d 499, 515 (Del. 2024) ...............................................................................10

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
    11 F.4th 200 (3d Cir. 2021) .....................................................................................7

*Fahr v. City of San Diego*,
    2021 WL 4895974 (S.D. Cal. Oct. 20, 2021) ..........................................................7

*Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*,
    861 A.2d 1233 (Del. 2004). ...............................................................................10, 11

*Frey v. Nigrelli*,
    661 F. Supp. 3d 176 (S.D.N.Y. 2023).....................................................................15

*Hope v. Warden York Cnty. Prison*,
    972 F.3d 310 (3d Cir. 2020).....................................................................................19

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797, 802 (3d Cir. 1989)............................................................................13

*Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach, Del.*,
    506 F. Supp. 3d 229 (D. Del. 2020).........................................................................9

*Koons v. Att'y Gen. N.J.*,
    2025 WL 2612055 (3d Cir. Sept. 10, 2025) ........................................8, 13, 16, 18

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................................7

*Md. Shall Issue, Inc. v. Moore,*
  116 F.4th 211 (4th Cir. 2024) ...................................................................................16

*Neuberger v. Delaware Dep't of Safety and Homeland Sec.,*
  No. 1:24-cv-00590 (D. Del. May 16, 2024) ....................................................2, 3, 15

*Nken v. Holder,*
  556 U.S. 418 (2009).............................................................................................15, 19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022)...........................................................................................11, 16, 17

*Or. Firearms Fed'n, Inc. v. Brown,*
  644 F. Supp. 3d 782 (D. Or. 2022) ...........................................................................14

*Or. Firearms Fed'n, Inc. v. Kotek,*
  682 F. Supp. 3d 874 (D. Or. 2023) ...........................................................................16

*Parker v. Wolf,*
  506 F. Supp. 3d 271 (M.D. Pa. 2020) .........................................................................7

*Reading v. N. Hanover Township,*
  124 F.4th 189 (3d Cir. 2024) .......................................................................................7

*S. Camden Citizens in Action v. N.J. Dep't of Env't Prot.,*
  274 F.3d 771 (3d Cir. 2001).........................................................................................6

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009).....................................................................................................8

*Tourmaline Mgmt. LLC v. Tourmaline Cap. Partners,*
  2025 WL 2338069, at *2 (D. Del. Aug. 13, 2025) .............................................11–12

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008).................................................................................................6, 19

*United States v. Harris,*
  144 F.4th 154 (3d Cir. 2025) .....................................................................................17

*United States v. Rahimi,*
  602 U.S. 680 (2024).............................................................................................17, 18

*United States v. Salerno,*
  481 U.S. 739 (1987)...................................................................................................19

iii

**Statutes**

1 Del. Admin. C. §801 ...................................................................................................................10

11 Del. C. § 1448D ................................................................................................................. *passim*

18 U.S.C. § 922(b)(1) ...................................................................................................................17

1893 Fla. Laws 71 .........................................................................................................................17

1902 Ga. Laws 427 .......................................................................................................................17

1905 N.C. Sess. Laws 545 ............................................................................................................17

An Act Providing for the Punishment of Persons Carrying Concealed
    Deadly Weapons, ch. 548, § 1, 1881 Del. Laws 987 ............................................................18

Jersey City, N.J., An Act to Re-organize the
    Local Government of Jersey City, § 3 (1874)........................................................................17

N.Y.C., N.Y., Ordinances ch. 6, art. 27 § 265 (1881) .................................................................17

**Other Authorities**

Joseph G.S. Greenlee, The Right to Train: A Pillar of the Second Amendment, 31 Wm. & Mary
    Bill Rts. J. 93 (2022) ............................................................................................................19

Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights, 80 L. &
    Contemp. Probs. 55 (2017) ...................................................................................................18

Saul Cornell, The Right to Regulate Arms in the Era of the Fourteenth Amendment: The
    Emergence of Good Cause Permit Schemes in Post-Civil War America, 55 U.C. Davis L.
    Rev. Online 65 (2021)....................................................................................................17, 18

## INTRODUCTION

It is entirely possible to purchase a handgun in Delaware today, and it will remain so after November 16, the effective date of Senate Substitute 1 for Senate Bill 2 (the ***Statute***), which enacts a common-sense gun permitting scheme known as permit-to-purchase, or P2P. The gravamen of Plaintiffs' Motion for Expedited Injunctive Relief (the ***Motion***)—that allowing the Statute to take effect on November 16 will create a *de facto* "total ban" on handgun sales—is demonstrably false. Hundreds of the permits required under the Statute have already been issued. Instead of applying for permits, and despite already having the relief they seek in their proposed order, Plaintiffs ask this Court to block the law from taking effect. Plaintiffs' Motion should be denied as moot.

Plaintiffs cannot meet their burden for the extraordinary injunctive relief they seek. *First*, Plaintiffs fail to demonstrate irreparable harm, as there is no *de facto* ban on the purchase and sale of handguns, and Plaintiffs may apply for and—if not barred by the Statute—obtain a permit to purchase one at any time. *Second*, Plaintiffs have no likelihood of success on the merits, as (1) they lack standing to challenge an application process to which they have never submitted themselves; and (2) the Statute is consistent with the nation's regulatory tradition of requiring some form of permit to acquire and possess a firearm. *Finally*, equity and public interest weigh heavily in Defendants' favor: Plaintiffs seek to enjoin a statutory scheme without trying to comply with it at the cost of public safety by blocking a common-sense regulation enacted to protect Delawareans.

## STATEMENT OF FACTS

## I.    THE STATUTE AND PLAINTIFFS' LAWSUITS

The Statute is a handgun permitting statute enacted to reduce gun violence without encroaching on individual constitutional rights. Under this permitting regime, the Director of the State Bureau of Investigation (***SBI***) "shall issue" a handgun qualified purchaser permit (a ***permit***)

to all applicants not barred by any of five narrow criteria. Permit applicants must take a firearms safety course, be fingerprinted, and submit an application. The Statute is set to go into effect November 16, "[e]ighteen months from the date of the Act's enactment." Compl. Ex. A, Sec. 5(1).

On May 16, 2024, Plaintiffs other than BKK Firearms and Smith filed a lawsuit in this Court challenging the constitutionality of the Statute under the Second, Fourth, and Fourteenth Amendments and Article I, Section 20 of the Delaware Constitution. *See Neuberger v. Del. Dep't of Safety & Homeland Sec.*, No. 1:24-cv-00590 (D. Del. May 16, 2024) (***Neuberger I***), D.I. 1. In response to Defendants' motion to dismiss, Plaintiffs filed a First Amended Complaint. *Id.* D.I. 28. In response to Defendants' second Motion to Dismiss, Plaintiffs (with the negotiated consent of the Defendants) sought permission from the Court to file yet another amended complaint. *Id.* D.I. 34. The Court granted permission but—pursuant to a stipulation agreed by the parties—ordered that Plaintiffs may "not seek to further amend their complaint.*" Id.* D.I. 40. Defendants' Motion to Dismiss the Second Amended Complaint is pending. *Id.* D.I. 41 (***Defendants' MTD***)

In an attempt to circumvent this Court's order forbidding further amendment of their Complaint (circumstances that will likely require future litigation to cure), Plaintiffs, now including BKK Firearms and its owner, Bruce C. Smith, filed this action on November 3, 2025 (***Neuberger II***). Plaintiffs' Complaint in this action is a copycat of the original complaint: it challenges the constitutionality of the Statute under the Second, Fourth, and Fourteenth Amendments and recycles swaths of text from previous complaints. *Compare* Compl. ¶¶ 142–192 *with Neuberger I*, D.I. 34-1 at ¶¶ 111–158.

Plaintiffs also filed the instant Motion for Expedited Injunctive Relief based exclusively on certain aspects of their Second Amendment claim, *see* Motion at 2, claiming Delaware "fail[ed] to have the infrastructure in place to issue the required permits" and has not enacted regulations

2

supposedly necessary to effectuate the permit application process, and has thus "effectively instituted a statewide total ban on the purchase and sale of handguns." Br. in Supp. of Mot. for Expedited Injunctive Relief, D.I. 4 (***Plaintiffs' Brief***) at 2, 5. On that (faulty) premise, Plaintiffs seek an order enjoining enforcement of the Statute until (1) the State has submitted to the court a "copy of an actual handgun qualified purchaser permit issued by the State to an eligible person," and (2) "fil[ed] with the Court sworn declarations . . . that all the necessary personnel, systems, and infrastructure has been implemented . . . to enable any eligible Delaware adult resident to readily apply for and obtain the required handgun qualified purchaser permit[.]" Plaintiffs' Proposed Order Granting Expedited Injunctive Relief, D.I. 3-2 (***Proposed Order***) ¶ 2.

Those claims are wrong. Defendants *have* implemented the necessary "infrastructure" and have already issued over 200 permits. A declaration and examples of issued permits are attached as exhibits herein. Decl. of Jason L. Stevenson (***Stevenson Decl.***) and Stevenson Decl. Ex. B.

No evidence to the contrary exists in the record. None of the exhibits to Plaintiffs' Complaint and none of the declarations accompanying their Motion indicate any of them have tried to obtain a permit. Instead, they assert that aspects of the permitting websites are not functional, Pls.' Br. at 8, even though they are, Stevenson Decl. ¶ 6, and that an unrelated background check system has been delayed until March 2026, Pls.' Br. at 9, which has no bearing on the P2P system, Stevenson Decl. ¶¶ 24–26. Evidence of any need for "expedited" relief is also lacking. The *Neuberger I* Plaintiffs allege they plan to buy a handgun no sooner than November 28. *See, e.g.*, Decl. of Thomas S. Neuberger, D.I. 6, ¶ 25. The two new Plaintiffs allege that they, as sellers of handguns, believe they will need to make an impossible choice between selling them unlawfully (due to the allegedly unobtainable permits), or going out of business. Decl. of Bruce S. Smith, D.I. No. 8, ¶ 19. But they do not allege any plan to purchase a handgun. These allegations

are insufficient to establish their standing to seek relief.

## II.    DELAWARE'S PERMIT TO PURCHASE INFRASTRUCTURE

Delawareans have been applying for and obtaining permits under the Statute since at least November 1, 2025, days before Plaintiffs filed this action. Stevenson Decl. ¶ 7. The Delaware Police have published numerous updates and sent communications informing individuals about the availability of the P2P tools; indeed, Plaintiff BKK Firearms was informed directly in October that this online system had been implemented and was available to applicants. Stevenson Decl. Ex. A. The Delaware Police P2P website lays out the application process and provides all information needed to apply for a permit, including (1) a step-by-step guide for applicants, (2) the application questionnaire, (3) a link to the Statute, (4) answers to frequently asked questions, (5) a link to schedule a fingerprinting appointment, and (6) a list of nearly 100 certified firearms instructors, (among them, Plaintiff BKK Firearms). *Id*. ¶ 14. All materials to apply for a permit can be found in hard copy at every State Police Troop Location in the state. *Id*. ¶ 16. The P2P website provides a telephone number for questions or to request assistance with the application process. *Id*. ¶ 14.

Plaintiffs' claim that "the State has not put in place the infrastructure necessary for an applicant to complete the training required to be granted a permit" is baseless. Pls.' Br. at 12; *see also id*. at 17. In reality, weeks ago, SBI implemented an informative website through which it is accepting applications, and SBI is sufficiently staffed to process applications as required by Statute. Stevenson Decl. ¶ 18. Qualified instructors' websites offer at least fourteen training courses between November 7 and November 16, 2025. *Id*. ¶ 21.

The Statute imposes several requirements a training course must meet to qualify an individual for a permit. *See* 11 Del. C. § 1448D(d)(f)(4)(a)–(k) (listing 11 specific requirements). Accordingly, SBI created an online tool through which training providers can qualify and that

provides Firearms Training Course Guidelines specifying the subjects that must be taught to applicants to ensure they meet the permit requirements. *See* Decl. of Keith Walter, Ex. A, D.I. 5-1. On October 6, 2025, the Delaware State Police contacted Delaware FFLs and informed them they could register to be approved training instructors on the DSP website. Stevenson Decl. ¶ 7 n.1. Plaintiff Bruce C. Smith, owner of BKK Firearms, Compl. at 10, completed this process and is listed as an approved instructor as of Nov. 3, 2025. Stevenson Decl. ¶ 7 n.1.

To suggest the P2P system is not functioning, Plaintiffs highlight language on the P2P website that permit to purchase regulations are "to be developed." Pls.' Br. at 8 n.8. But this has no impact on an individual's ability to successfully apply for a permit online. Stevenson Decl. ¶ 15. The language is a placeholder in case regulations are promulgated in the future, but the Statute does not require agencies to do so (it says they "may"), and none is required to implement the Statute. *Id.*; *see infra* 8–11 (discussing Plaintiffs' regulation arguments).

The State has already issued 218 permits as of the date of filing, Stevenson Decl. ¶ 11, and there are seven applications currently pending. *Id.* ¶ 13. The State has not received an application from any of the Plaintiffs. *Id.* ¶ 10. The State has processed all permit applications well within the 30-day period provided by the statute. *Id.* ¶ 19. In about 90% of cases, SBI has granted permits within one to three business days. *Id.* And, to prepare for a potential increase in applications, SBI has hired four additional troopers and five civilian analysts to join the P2P Section. *Id.* ¶ 18.

In a confusing move, Plaintiffs appear to argue that the P2P system must not be functioning because the State has delayed the implementation of a separate background check system, the Firearm Transaction Approval Program (**FTAP**). But P2P is not FTAP, and the FTAP process has no bearing on the availability of a P2P permit. Currently, an individual seeking to buy a firearm in Delaware undergoes two separate background checks. *Id.* ¶ 27. The first is performed by the SBI

5

during the P2P permit application process. *Id*. That process is fully operational. *Id*. The second background check is separate from the application process and part of the purchase process when an individual goes to an FFL to buy a firearm. *Id*. ¶ 28. That process, too, is fully operational, but eventually it will be replaced with the FTAP process. *Id*. ¶¶ 28-29. The FTAP system will streamline this second FFL process by allowing the FFL to contact only SBI to run a complete check instead of needing to contact both the FBI and SBI separately, as is required today. *Id*. ¶ 29. This will make the process slightly faster for the purchaser, but purchasers are still able to obtain permits and purchase firearms prior to FTAP being implemented. *Id*.

## LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary remedy that should be granted only in limited circumstances." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) (**DSSA**) (internal brackets omitted) (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021)), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). To obtain a preliminary injunction, the moving party must make a "clear showing" that: (1) it has a likelihood of success on the merits; (2) there is a risk of irreparable harm absent preliminary relief; (3) the balance of the equities are in its favor; and (4) the injunction would support the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *DSSA*, 108 F.4th at 202. "The first two factors are the 'most critical.'" *DSSA*, 108 F.4th at 202 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Failing to show either a likelihood of success or risk of irreparable harm, "necessarily result[s] in the denial of a preliminary injunction." *S. Camden Citizens in Action v. N.J. Dep't of Env't Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (citation omitted).

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING TO SUE TO ENJOIN THE STATUTE.

Plaintiffs lack standing to challenge an application process with which they have

6

never attempted to comply.[1] Nowhere in their Motion or related papers have any of the Plaintiffs

pled an "injury in fact—an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560 (1992) (internal quotation marks omitted). This is enough on its own to defeat a

motion for preliminary injunction. *See Parker v. Wolf*, 506 F. Supp. 3d 271, 292 (M.D. Pa. 2020)

(denying motion for preliminary injunction for lack of standing).

A plaintiff who challenges the lawfulness of an application process without first submitting

himself to that process can establish standing only by showing he was "able and ready" to apply

for a benefit, but application "would be futile." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11

F.4th 200, 205–06 (3d Cir. 2021) (quoting *Carney v. Adams*, 592 U.S. 53, 66 (2020)). This is fatal

to the buyer-Plaintiffs' standing, as they fail to offer any evidence that they

have submitted themselves to the application process and whose assertions of futility cannot

survive contact with the facts. They also have waited 18 months from the Statute's enactment to

try to make purchases on November 28, 2025. But Plaintiffs cannot "manufacture standing merely

by inflicting harm on themselves." *Reading v. N. Hanover Township*, 124 F.4th 189, 198 (3d Cir.

2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)); *see Clapper*, 568 U.S. at

418 (holding "self-inflicted" constitutional injuries "are not fairly traceable to the Government's

purported[ly] [unconstitutional activities]" and thus do not give rise to standing); *Fahr v. City of

San Diego*, 2021 WL 4895974, at *13 (S.D. Cal. Oct. 20, 2021) (denying preliminary relief for

"wholly self-inflicted constitutional violations" where plaintiffs did not use "ample time" to adjust

non-compliant firearm parts). Plaintiffs' attempt to manufacture standing is also distinguishable

from the allegations in *Koons v. Att'y Gen. New Jersey*, where the plaintiffs alleged that New

---

[1] As requested by the Court, Defendants incorporate their arguments from *Defendants' MTD*, adding the following arguments in light of the current circumstances.

Jersey's application process necessitated something the state could not require of them—the submission of endorsements from four reputable persons. 2025 WL 2612055, at *22 (3d Cir. Sept. 10, 2025), *as amended* (Sept. 17, 2025). Plaintiffs make no similar allegation here.

Plaintiffs Delaware State Sportsmen's Association, Inc. and Bridgeville Rifle & Pistol Club, Ltd. fare no better. They lack standing on behalf of their members because the Motion fails to "make specific allegations establishing that at least one identified member . . . would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 553 (10th Cir. 2016) ("The mere possibility that 'some day' a member of [plaintiff organization] might wish to obtain or retain a firearm . . . and that he or she might then experience difficulties [meeting] the requisite [permitting requirements] is insufficient to establish an imminent injury for purposes of Article III standing."). Plaintiffs make no similar allegation for not being able to apply.

Plaintiffs BKK and Smith do not request relief in the Motion, as they do not seek to apply for a permit. They therefore do not have standing for this Motion. *See Summers*, 555 U.S. at 493 (plaintiff "bears the burden of showing that he has standing for each type of relief sought").

## II.    PLAINTIFFS WHO CAN ALREADY GET PERMITS DO NOT NEED AN INJUNCTION SO THEY CAN GET PERMITS.

Even if the Court were to find standing, Plaintiffs already have what they are seeking. Plaintiffs are not seeking an injunction on the basis that the Statute is unconstitutional as drafted (that is an aim of their *Complaint*), but rather on the basis that the Statute, as implemented, will operate as a *de facto* "total ban" on handgun purchases. Thus, the injunction they seek is limited: Plaintiffs' Proposed Order only asks the Court to enjoin the Statute until (1) the State submits to the Court a "copy of an actual handgun qualified purchaser permit issued by the State to an eligible person," and (2) the state "fil[es] with the Court sworn declarations . . . that all the necessary

personnel, systems, and infrastructure has been implemented, in accordance with the Delaware Administrative Procedures Act [(**APA**)], to enable any eligible Delaware adult resident to readily apply for and obtain the required handgun qualified purchaser permit." They seek a "reasonable amount of time" to complete the permitting process (a process they could have begun weeks ago).

Because Plaintiffs have the relief they request, Plaintiffs' Motion should be denied as moot or inapplicable. *See, e.g.*, *Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach, Del.*, 506 F. Supp. 3d 229, 237 (D. Del. 2020) (motion for preliminary injunction moot given conforming conduct by defendant).

The documents and representations Plaintiffs demand are attached as exhibits to this Opposition, thereby mooting most of the requested relief. Stevenson Decl.; *id.* Ex. B. As for the rest, there is nothing for the Court to do about Plaintiffs' red-herring arguments on the APA. Plaintiffs allege "[t]he State and SBI has also failed to initiate the necessary, months-long APA procedures to pass regulations it and its agencies have determined are necessary to the Permit Bill's implementation." Pls.' Br. at 12. To back this up, Plaintiffs point to the Delaware State Police Firearms Training Course Guidelines (**Guidelines**) and the requirement that training courses and firearms instructors be approved by SBI. *Id.* at 13; D.I. 5-1, § IV.C–E. They assert these Guidelines and approval requirements violate the APA. Pls.' Br. at 9. Their argument fails.

First, there is no cause of action to invalidate the referenced materials. Neither Plaintiffs' Complaint nor Motion includes a count for violation of the APA. Instead, they ask the Court to presume the Guidelines are invalid based on threadbare, conclusory assertions and to accept that their presumed invalidity somehow operates to harm the Plaintiffs. Second, while Defendants need not rebut Plaintiffs' unperfected APA claim, the APA is not implicated here. No regulations are required by the Statute: the SBI "*may* adopt regulations to administer, implement, and enforce"

the Statute. 11 Del. C. § 1448D(q) (emphasis added). Moreover, the Guidelines literally reiterate the course content requirements as stated in the Statute, Compl. Ex. G, ¶IV, D.I. 1-7, and the requirements for trainer certification. The Statute provides that for the required certificate, an instructor applicant must present to SBI a certificate "from a nationally recognized organization" or "law-enforcement agency." 11 Del. C. § 1448D(f)(4). The Guidelines do the same by requiring a certificate from a law enforcement agency that "meets the Delaware POST [Police Officer Standards and Training] standards for firearms instructors" or "from a nationally recognized organization." *Id*. This is logical because Delaware POST—not SBI—is vested with the authority to regulate instructor training standards for any instructor who will train sworn officers. 11 *Del. C.* § 8404(a)(10). Those qualifications are established by 1 Del. Admin. C. §801 and cannot be modified by SBI. No additional regulations are necessary to implement P2P.

Delaware law provides that "when an agency . . . implements a specific and detailed statutory directive, it may operate outside the scope of the APA." *Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*, 861 A.2d 1233, 1236 (Del. 2004). Here, the plain language of the Statute provides a clear mandate regarding the requirements of the firearms training courses. *See* 11 Del. C. § 1448(d)(f)(4)(a)–(k) (providing 11 specific requirements). The Guidelines that Plaintiffs allege require APA review, *see* D.I. 5-1, § IV.C–E, straightforwardly implement the legislature's mandate. *See DeMatteis v. Rise Delaware Inc.*, 315 A.3d 499, 515 (Del. 2024) (finding that the adoption of a healthcare plan authorized by statute was outside the APA's scope). Indeed, the materials of which Plaintiffs complain effectively copy-and-paste language directly from the Statute. To ensure that the legislature's numerous requirements are appropriately applied, it is necessary that training courses be approved and instructors be certified. *See* D.I. 5-1, § IV.C–E (clarifying conditions for approval of certified training courts and

instructors). The Guidelines are logically within the scope of SBI's implementation duties. *See Free-Flow Packaging*, 861 A.2d at 1236 ("level of specificity in statute" provided agency authorization to implement fee categories without APA review). Plaintiffs' reliance on *Delaware State Sportsmen's Association v. Garvin* is misplaced: the agency action there did not involve implementation of a statute regime. 2020 WL 6813997, at *10 (Del. Super. Nov. 18, 2020).

Finally, even if the Court were to assume that the referenced Guidelines and materials are invalid under the APA (which it should not), Plaintiffs' Motion cannot survive on APA arguments alone given that their other relief is already available.

## III.    PRELIMINARY INJUNCTIVE RELIEF IS NOT WARRANTED.

### A.    Preliminary Injunctions Are Extraordinary Relief Not Appropriate Here.

Preliminary injunctions are reserved for "exceptional cases" and "drastic circumstances." *DSSA*, 108 F.4th at 199, 206. The circumstances here hardly qualify. As explained herein, the "shall-issue" licensing Statute is presumptively constitutional; it does not infringe on Plaintiffs right to keep and bear arms. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38. Moreover, several Plaintiffs claim that on November 28—three weeks after their Motion and nearly two weeks after the effective date of the Statute—they plan to purchase a handgun that will require a permit they do not have. They could avoid this fate either by buying before November 16, or applying for a permit. An injunction is unnecessary to avert Plaintiffs' phantom harms, and entering one would harm public safety.

The Third Circuit also cautioned that "injunctions raise [] problems" because, *inter alia*, they are often "granted hurriedly and on the basis of very limited evidence[,]" "[t]ime pressures limit adversarial testing[,]" and when enjoinment of a new law is at issue, "courts must forecast how the law will work." *DSSA*, 108 F.4th at 200 (internal quotation marks and citations omitted); *see Tourmaline Mgmt. LLC v. Tourmaline Cap. Partners, LLC*, 2025 WL 2338069, at *2 (D. Del.

Aug. 13, 2025) (observing that preliminary relief is an "extraordinary remedy never awarded as of right" and denying motion). Plaintiffs' Motion poses these risks.

### B.    Plaintiffs Have Failed to Show Irreparable Harm.

#### 1.    Plaintiffs Have Failed to Establish a Risk of Irreparable Harm.

Rather than using the time before the Statute's effective date to apply for a permit or buy a handgun, Plaintiffs brought this Motion. Meanwhile, the State has been issuing permits. Firearms training courses necessary to obtain permits have, and will continue to be, offered. This is far from the "total ban" Plaintiffs allege is imminent. No injunction is necessary today to avoid a harm Plaintiffs can avoid themselves and for which they have plenty of time to do so. And even if—once they apply—it takes some Plaintiffs until after November 28 to satisfy the permitting requirements, the only harm related to that delay is marginal cost. Indeed, their claims of a pressing need for a handgun to protect themselves cannot be squared with failing to buy one in the 18 months since the Statute was enacted. The Plaintiffs who sell firearms may sell them to any customer who has received a permit, and may continue selling a variety of other types of guns.

In any event, Plaintiffs' alleged inability to obtain a firearm permit after November 16, 2025, would not establish a risk of irreparable harm. *DSSA* is instructive. *See* 108 F.4th at 204–05. There, the plaintiffs attested that they intended to purchase firearms and would do so if legal, but the challenged Delaware law outlawed their possession or purchase. *See id.*; Decl. of Cecil Curtis ¶ 11, *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. 1:22-cv-00951 (D. Del. Jul 20, 2022) D.I. 21 Decl. of Cecil Curtis at ¶ 11 ("I also desire and intend to acquire additional [banned] firearms . . . ."). The Third Circuit upheld the denial of preliminary relief because the plaintiffs had not "allege[d] a time-sensitive need for such guns" and their "generalized claim of harm is hardly enough to call for this 'extraordinary and drastic remedy.'" *DSSA*, 108 F.4th at 205–06 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see also*

12

*Koons*, 2025 WL 2612055, at *42 ("[V]iolations of constitutional rights are not presumed irreparable outside the First Amendment context . . . ."). Even if the Delaware statute in *DSSA* violated the plaintiffs' Second Amendment rights, that harm "can be cured after final judgment." 108 F.4th at 205. "That finding alone suffices to support" denial of preliminary relief. *Id*.

So too here. Plaintiffs who seek to purchase firearms have not alleged a "time-sensitive need" for firearms. They only assert a general intent to purchase a firearm. *See, e.g.*, Decl. of Thomas S. Neuberger, D.I. 6, ¶ 25 ("I intend to purchase a Sig Sauer P365 on November 28, 2025 . . . ."); Decl. of Jeffrey W. Hague, D.I. 7, ¶ 17 ("I am aware of and spoken directly with several DSSA members who intend to purchase a handgun for self-defense and other lawful purposes after SB 1 for SB 2 is implemented. . . ."). This "generalized claim of harm is hardly enough to call for this 'extraordinary and drastic remedy.'" *DSSA*, 108 F.4th at 205 (quoting *Mazurek*, 520 U.S. at 972). As for the Plaintiffs who sell firearms, it has long been held that "[e]conomic loss does not constitute irreparable harm," and even where that harm stems from a constitutional violation, it "can be remedied by an award of money damages." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653, 655 (3d Cir. 1994). Plaintiff BKK Firearms claims it faces bankruptcy if temporarily unable to sell handguns, Decl. of Bruce C. Smith, D.I. 8, ¶¶ 17–19, but has presented no financial statements or projections to support this assertion and, even if unable to sell handguns, Plaintiff would be able to sell other firearms not covered by the Statute. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (no irreparable injury where plaintiff's assertion of bankruptcy was "not supported by any financial statements or projections in the record" and plaintiff "still maintains twenty percent of its business"). The evidence also shows that permits are issuing, so *a fortiori* individuals will be able to present proof of permits to purchase handguns from the seller Plaintiffs.

Because Plaintiffs will not suffer injury absent preliminary relief, and the injuries they allege would not suffice even if they occurred, this Court should deny their request. *See Or. Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 812 (D. Or. 2022) (denying preliminary injunction of permit to purchase law absent harm because plaintiffs could apply for permit).

### 2.    The Harm Plaintiffs Allege Will Not Moot This Case.

The Third Circuit has explained that "the threat of irreparable harm does not automatically trigger a preliminary injunction." *DSSA*, 108 F.4th at 201. "Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Id.* (quoting 11A Wright & Miller § 2948.1, at 129). Thus, "[c]ourts may withhold this extraordinary remedy if a plaintiff's alleged injury does not threaten to moot the case." *Id.*

Even if Plaintiffs' allegations of harm were accurate, the occurrence of those harms would not moot this case because the Court could still grant an effective remedy. Even if Plaintiffs were unable to buy or sell firearms in the near-term (although permits are readily accessible), the Court can nevertheless rule in the course of litigation on Plaintiffs' claims that the Statute infringes on constitutional rights and, if it does, grant an effective remedy by enjoining the Statute's enforcement. The Court could also award damages if Plaintiffs prove economic losses. While Plaintiffs argue this action may be "rendered useless by Plaintiffs' death," Pls.' Br. at 6, this is absurd. Were Plaintiffs truly worried about their safety, they could apply for a permit; they could obtain a rifle or shotgun not covered by the Statute; or they could simply have purchased a handgun anytime in the year-and-a-half since filing their first complaint challenging the Statute.[2]

Plaintiffs have "offered no evidence that without a preliminary injunction, the District

---

[2] Plaintiffs allege they anticipate prices will be favorable on November 28, 2025 (Black Friday). This is speculative. But in any event, the only harm they are alleging in that context is the marginal price difference between the sale price on November 28, 2025, and any day before that.

Court will be unable to decide the case or give them meaningful relief[.]" Thus denial of their request is appropriate. *DSSA*, 108 F.4th at 205; *see also Frey v. Nigrelli*, 661 F. Supp. 3d 176, 207 (S.D.N.Y. 2023) (denying request for preliminary injunction because "the alleged violations of Plaintiffs' Second Amendment rights . . . are not sufficient to show irreparable harm.").

C.     **Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits.**

Plaintiffs' request for injunctive relief further fails because they have not established any likelihood of success on the merits of their claim. A "strong showing" of a likelihood of success on the merits requires more than a "mere possibility" that relief will be granted. *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Plaintiffs fail to show even a mere possibility of success.

Importantly, Plaintiffs' Motion only argues that the State's alleged inability to implement the Statute violates the Second Amendment. In its November 5, 2025, Oral Order, the Court directed Defendants to present "argument as to the challenged law's consistency with the principles that underpin the nation's regulatory tradition, as set forth by *Bruen* and *Rahimi*." D.I. 16. Although Plaintiffs' Motion does not claim that the Statute itself violates the Second Amendment—rather, they argue it will be implemented improperly, thereby creating a "total ban" on handgun sales—such a claim would have no likelihood of success. This is because the Statute fits squarely within the bounds of permissible regulations under Second Amendment: (i) the Statute is a presumptively constitutional shall-issue permitting regime, and (ii) the Statute is consistent with this Nation's historical tradition of firearm regulation. Plaintiffs' Brief does not make any Fourth Amendment or void for vagueness claims for expedited relief, but they too would be unlikely to succeed. *See Neuberger I*, D.I. 42, at 16–25.

1.     **Shall-Issue Permitting Regimes Like the Statute Are Permissible.**

As Defendants explained in *Neuberger I*, the Statute is a presumptively constitutional "shall-issue" permitting regime. *See Neuberger I*, D.I. 42, at 12–14. The Third Circuit recently

explained that determining the constitutionality of requirements associated with permitting laws "does not require an assessment of historical analogues because shall-issue licensing regimes . . . remain presumptively constitutional." *Koons*, 2025 WL 2612055, at *21. *Bruen* explains that shall-issue regimes, which employ "narrow, objective and definite standards, "often require applicants to undergo a background check or pass a firearms safety course," are permissible under the Second Amendment because they, like the Statute, "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" 597 U.S. at 38 n.9; *see also Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 216 (4th Cir. 2024) (upholding permit-to-purchase law "nearly identical" to the Statute as presumptively constitutional) (*Neuberger I* Plaintiffs characterized the Maryland statute as "nearly identical" to the Delaware statute in their Complaint. *Neuberger I*, D.I. 1, ¶ 67); *Or. Firearms Fed'n, Inc. v. Kotek*, 682 F. Supp. 3d 874, 936–40 (D. Or. 2023) (upholding permit-to-purchase statute requiring permit, fingerprinting, and training course).

## 2.   The Statute is Consistent with the Nation's Regulatory Tradition.

Any Second Amendment challenge would be unlikely to succeed on the merits because the Statute is "consistent with this Nation's historical tradition of firearm regulation."[3] *Bruen*, 597 U.S. at 17; *see Koons*, 2025 WL 2612055, at *23 (plaintiffs failed to demonstrate likelihood of success where the law "fit[] squarely within the principles underlying our Nation's history of firearm regulation"); *DSSA*, 108 F.4th at 217 (Roth, J., concurring) (no likelihood of success where "Delaware's laws are consistent with the nation's historical tradition of firearm regulation").

*Bruen* requires a "nuanced approach" to historical analysis to avoid putting a "regulatory

---

[3] Defendants emphasize that this historical analysis has been provided in response to the Court's request and in the context of procedural limitations. It should be understood as brief summary which merely scratches the surface of the full breadth of the Statute's historical analogues. Should these cases reach full merits briefing, Defendants intend to provide expert testimony.

straightjacket" on governments seeking to protect the public from dangerous firearms. *Bruen*, 597 U.S. at 27, 30. Indeed, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *United States v. Rahimi*, 602 U.S. 680, 691–92 (2024). A modern regulation need not be the "twin" of a historical regulation, but rather the two should be "relevantly similar." *Bruen*, 597 U.S. at 29–30. When determining if regulations are relevantly similar, the Court considers "*how* and *why* the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29 (emphases added). "[T]he analogy turns on similarity in principle, not specific facts[.]" *United States v. Harris*, 144 F.4th 154, 158 (3d Cir. 2025).

The Statute is consistent with the principles that underpin the Nation's regulatory tradition. The United States has a long history of requiring individuals acquire some type of permit to purchase a firearm. Permitting schemes emerged in the Reconstruction Era and became "the dominant model of firearms regulation in America" as gun violence emerged as a grave and novel societal problem. Saul Cornell, *The Right to Regulate Arms in the Era of the Fourteenth Amendment: The Emergence of Good Cause Permit Schemes in Post-Civil War America*, 55 U.C. Davis L. Rev. Online 65, 89 (2021). These "ordinances were first enacted by municipalities" and "were soon emulated by states." *Id.* By the end of the 19th century, "[r]esidents in the ten most populous cities in America . . . all lived under some form of restrictive public carry regime" including "permit schemes." *Id.* at 84. These permitting schemes, like the Statute, sought to ensure that those possessing firearms were "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 70. Examples of historic permitting laws include: 1893 Fla. Laws 71, 71–72; 1905 N.C. Sess. Laws 545, 547; 1902 Ga. Laws 427, 434–35; Jersey City, N.J., An Act to Re-organize the Local Government of Jersey City, § 3 (1874); N.Y.C., N.Y., Ordinances ch. 6, art. 27 § 265 (1881).

"[I]mposing similar restrictions for similar reasons" as historical firearm regulations is a

"strong indicator" that a contemporary law will "fall within a permissible category of regulations." *Rahimi*, 602 U.S. at 692. Here, the Statute advances the same interests that motivated historical firearm regulations: reducing gun violence and promoting public safety. *See* Cornell, *supra* 17, at 68–69, 78; Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs. 55, 58 (2017) ("America's early governmental preoccupation with gun possession, storage, and regulation was tied to the overarching concern for public safety."). Each component of the Statute helps achieve these purposes, and each has historical analogues:

(i) <u>The applicant must be at least 21 years old, 11 Del. C. § 1448D(f)(1)</u>: Federal law has prohibited the sale of handguns to persons under age 21 since 1968. 18 U.S.C. § 922(b)(1). Further, age restrictions were common before and during the Reconstruction Era, including in Delaware, which outlawed the sale of deadly weapons to minors. *See, e.g.*, An Act Providing for the Punishment of Persons Carrying Concealed Deadly Weapons, ch. 548, § 1, 1881 Del. Laws 987.

(ii) <u>The applicant must not be prohibited from purchasing, owning, possessing, or controlling a deadly weapon—*e.g.*, because the applicant was convicted of a felony or domestic violence offense, or is subject to a protective order, *id.* § 1448D(f)(2)</u>: In *Rahimi*, the Supreme Court upheld a statute prohibiting individuals subject to domestic violence restraining orders from possessing firearms. 602 U.S. at 698.

(iii) <u>There must not be probable cause to believe that the applicant poses a danger to themselves or others, *id.* § 1448D(f)(3)</u>: "From the beginning of the Nation, jurisdictions limited the ownership and use of guns to those who were not considered dangerous by their communities[,]" *Koons*, 2025 WL 2612055, at *22 (citing *Rahimi*, 602 U.S. at 693–98 (collecting historical statutes that "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.")).

(iv) The applicant must have passed a firearms training course within five years of the application, *id.* § 1448D(f)(4): "England ha[d] an extensive tradition of training mandates" back to 1363. Joseph G.S. Greenlee, *The Right to Train: A Pillar of the Second Amendment*, 31 Wm. & Mary Bill Rts. J. 93, 99 (2022). That tradition continued in America from colonial Times. *Id.* at 108.

(v) The applicant cannot be otherwise prohibited from purchasing or possessing firearms under Delaware or federal law, *id.* § 1448D(f)(5).

**D.    The Equities and the Public Interest Weigh in Defendants' Favor.**

To balance the equities, the Court weighs the harm the opposing party would suffer from an injunction against the harm to the movant absent the injunction. *See Winter*, 555 U.S. at 24. "[W]hen the Government is the opposing party," factors three and four merge because harm suffered by the Government constitutes harm to the public. *Nken*, 556 U.S. at 435.

"[A court's] consideration of risk to the public's safety before providing preliminary injunctive relief is crucial." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) (federal government has "compelling interests in public safety"). Defendants have a compelling interest in protecting Delawareans' safety by ensuring that those who wish to purchase handguns have the proper qualifications and training. The Statute helps keep the public safe.

Moreover, "'[t]here is always a public interest in prompt execution' of the laws," especially where a federal court is asked to interfere with the enforcement of a state law. *DSSA*, 108 F.4th at 205 (quoting *Nken*, 556 U.S. at 436). While federal courts may strike state laws that go beyond the state's constitutional authority, this power hinges on a complete record. "Without the clarity of a full trial on the merits . . . [federal courts] must err on the side of respecting state sovereignty." *Id.* at 206. Invalidation of the Statute now would constitute an affront to state sovereignty.

19

Plaintiffs claim the public interest weighs in their favor based solely on their assertion that the "enforcement of an unconstitutional law vindicates no public interest." Pls.' Br. at 17 (quoting *K.A. ex rel. Ayers v. Pocono Mt. Sch. Dist.*, 710 F.3d 99, 114 (3d. Cir. 2013)). Yet their Motion challenges an imagined future "total ban" that would *conflict* with the Statute at the heart of their Complaint. Plaintiffs have not demonstrated that they will likely suffer a deprivation of their constitutional rights and so cannot show that they will face *any* significant harm in the absence of injunctive relief. In contrast, any preliminary injunctive relief in this case would harm the State's public safety interests and "threaten[] federalism and the separation of powers[.]" *DSSA*, 108 F.4th at 205. Because the harms to the State greatly outweigh any individual harms alleged by Plaintiffs, public interest weighs in favor of denying a preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion for Expedited Injunctive Relief should be denied.

Dated: November 10, 2025

*Of Counsel*:

FRESHFIELDS US LLP

Jennifer B. Loeb (*pro hac vice* forthcoming)
Austin R. Evers (*pro hac vice* forthcoming)
Lauren Kaplin (*pro hac vice* forthcoming)
Jacob Johnston (*pro hac vice* forthcoming)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
jennifer.loeb@freshfields.com
austin.evers@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (*pro hac vice* forthcoming)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants*

Respectfully submitted,

DELAWARE DEPARTMENT OF JUSTICE

 */s/ Jennifer K. Aaronson*
Ian R. Liston (DE #5507)
Jennifer K. Aaronson (DE #3478)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Ian.Liston@delaware.gov
jennifer.aaronson@delaware.gov

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 10, 2025, he caused the forgoing Brief in Support of Defendants' Opposition to Plaintiffs' Motion for Expedited Injunctive Relief to be served on all counsel of record via the Court's electronic filing service.

*/s/ Ian R. Liston* _____

Ian R. Liston (#5507)
