**NOREIKA, U.S. DISTRICT JUDGE:**

On November 3, 2025, Thomas S. Neuberger, Jerry L. Martin, William R. Hague, Jr., Bruce C. Smith, Bridgeville Kenpo Karate, Inc. D/B/A BKK Firearms, the Delaware State Sportsmen's Association, Inc, and the Bridgeville Rifle & Pistol Club, Ltd., ("Plaintiffs"), filed a Complaint against Joshua Bushweller, in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security, and Col. William Crotty, in his official capacity as superintendent of the Delaware State Police ("Defendants"). The Complaint alleges that Delaware's Senate Bill No. 2 ("SB 2"), and its amendment, Senate Substitute No. 1 ("SS 1"), which implement a regime requiring would-be handgun purchasers to acquire a permit before they do so, is unconstitutional. (D.I. 1). Because the law goes into effect on November 16, 2025, Plaintiffs filed a concurrent Motion for Emergency Injunctive Relief; that motion is presently before the Court. (D.I. 3). The Court ordered expedited briefing on the motion and heard argument from the parties on November 13, 2025. (D.I. 4, 20, 29). After careful consideration of the papers and argument, the Court DENIES Plaintiff's request for injunctive relief.

## I. BACKGROUND

### A. The Challenged Delaware Law

The Second Amendment provides: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Am. II. Although fundamental to the country's heritage, the right to keep and bear arms "is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 726 (2008). On May 16, 2024, the State of Delaware enacted SB 2, and its amendment, SS 1, which condition a Delawarean's ability to purchase handguns upon the grant of a permit. The legislation devises a scheme wherein the State Bureau of Identification ("SBI") within the Division of State Police "shall, on application, issue a handgun qualified purchaser permit" to any person applying for one, and sets out limited

handguns for various lawful reasons and find themselves aggrieved by the statute. (*See* D.I. 1 ¶¶ 7-28). Neuberger, a 78-year-old attorney, alleges he wishes to purchase a handgun for self-defense (*Id.* ¶ 12); Martin wishes to purchase a handgun for a competitive shooting event (*Id.* ¶¶ 16-18); and Hague is a 19-year-old who expresses his desire to purchase a handgun as soon as is legally practicable. (*Id.* ¶ 37). Neuberger, Martin, and Hague are members of the Plaintiff organizations, the Delaware State Sportsmen's Association and the Bridgeville Rifle and Pistol Club, Ltd.; Martin is currently president of the latter. (*Id.* ¶¶ 32, 40, 43). The Plaintiff organizations are allegedly composed of other individuals also "subjected to the Permit-to-Purchase requirement." (*Id.* ¶ 40).

In both cases, these overlapping Plaintiffs allege the same counts against the same Defendants, serving in substantially the same capacities. This is notable in light of the fact that in the earlier-filed case, after a series of motions to dismiss and amendments,[3] the Court "So Ordered," the parties' agreed-upon stipulation that Plaintiffs may "not seek to further amend their complaint." (*Neuberger I*, D.I. 40).

There are also two newcomers to this action. Plaintiff Bruce C. Smith is a Delawarean and member of both the Delaware State Sportsmen's Association and the Bridgeville Rifle and Pistol Club. (*Id.* ¶ 30). He is also the owner of Bridgeville Kenpo Karate, which does business as BKK Firearms (*Id.* ¶ 29). BKK Firearms is a federally-licensed firearms dealer that sells firearms in Delaware and complains SS 1 will suppress its rights as antecedent to its customers rights to purchase arms. (*Id.* ¶¶ 32, 33).

---

[3] Defendants filed a motion to dismiss, to which Plaintiffs responded with a First Amended Complaint. (*Neuberger I*, D.I. 28). Then, in response to Defendants' second Motion to Dismiss, Plaintiffs (with consent of the Defendants) sought leave to file yet another amended complaint. (*Neuberger I*, D.I. 34). The Court allowed the amendment along with the stipulation that limited Plaintiffs' ability to further amend. (*Neuberger I*, D.I. 40). Defendants then filed yet another motion to dismiss, which remains pending.

3

### C. The Present Motion

Although the Complaints in the two related cases assert multiple counts, the issues in the pending motion for a preliminary injunction are narrower. The motion focuses on Plaintiffs' argument that Delaware "has failed to establish the infrastructure necessary to issue permits by [November 16, 2025,] the date the law is to be enforced. (D.I. 4 at 1). And that failure amounts "to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society…". (*Id.* at 2 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008)).

## II. LEGAL STANDARD

### A. Preliminary Injunctive Relief

Preliminary injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because a preliminary court order may "allow or disallow anticipated action before the legality of that action has been conclusively determined[,]" a moving party seeking that order must show: (1) a likelihood of success on the merits; (2) irreparable harm absent preliminary relief; (3) that the balance of the equities are in its favor; and (4) that the public interest is supported by the relief. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F. 4th 194, 202 (3d Cir. 2024). The first two factors are the most important; a failure to show either a likelihood of success or risk of irreparable harm will "necessarily result in the denial of a preliminary injunction." *Delaware State Sportsmen's Ass'n, Inc.*, 108 F. 4th at 202 (quoting *Nken*, 556 U.S. at 434); *S. Camden Citizens in Action v. New Jersey Dep't of Env't Prot.*, 274 F. 3d 771, 777 (3d Cir. 2001) (citation omitted). When the government is the defendant, as is the case here, the final two factors merge into one. *Elansari v. U.S.*, 615 Fed. App'x 760, 761 (3d Cir. 2015) (citing *Nken*, 556 U.S. at 435).

At each step of the analysis, it is the burden of the moving party – here, the Plaintiffs – to make "a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting and emphasizing 11A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 2948 (2d ed. 1995)).

### B. Claim Splitting

In the Third Circuit, a party "ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F. 2d 66, 70 (3d Cir. 1977) (citing *United States v. Haytian Republic*, 154 U.S. 118, 123-24 (1894)). This rule, known as "claim splitting[,] prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Leonard v. Stemtech Int'l, Inc.*, No. 12-86 (CJB), 2012 WL 3655512, at *5 (D. Del. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 4591453 (D. Del. Sept. 28, 2012). When claims are improperly split, a "district court may stay or dismiss a suit that is duplicative of another federal court suit." *Feingold v. Liberty Mut. Grp.*, No. 13-743 (HB), 2013 WL 1733056, at *3 (E.D. Pa. Apr. 22, 2013) (citing *Curtis v. Citibank, N.A.*, 226 F. 3d 133, 138 (2d Cir. 2000)).

## III. DISCUSSION

Because both parties acknowledge the duplicative nature of the individual Plaintiffs' presence in this action, the Court considers claim splitting prior to turning to the preliminary injunction analysis. (D.I. 12, 18).

### A. Claim Splitting

The day after filing the Complaint and their motion for injunctive relief in this action, Plaintiffs filed a letter addressing why a new action was filed, as opposed to seeking relief or amendment in *Neuberger I*. (D.I. 12). That letter deemed the pending motion to dismiss in *Neuberger I* to be moot, in part because "significant new developments have arisen." (*Id.* at 1).

5

Evidently, those developments motivated the *Neuberger I* Plaintiffs' decision to file a new action, despite the stipulated, and Court ordered, agreement against such amendments in their earlier-filed case. (*Neuberger I* at D.I. 40) ("Plaintiffs will not seek to further amend their complaint."). Defendants noted that, and implicitly raised the question of claim splitting in response. (D.I. 18).

The Court appreciates that this is an area where the facts are constantly evolving, "the law itself is complicated", and the related procedural demands can be "difficult to navigate." *Higgs v. Atty. Gen. of the U.S.*, 655 F. 3d 333, 340 (3d Cir. 2011), *as amended* (Sept. 19, 2011); *see also Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421, 437 (D.N.J. 2024) ("Within the past several years, the Second Amendment and corresponding analysis undertaken by the courts has been in flux."). That being said, it remains that "[t]he interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947). Although the factual circumstances regarding the *Neuberger I* Plaintiffs' claims may have changed, those changes are not necessarily unexpected. And those changes do not mean that Plaintiffs can circumvent the stipulations they agree to – and asked the Court to enter – when they so please. A better course would have been, for example, to seek leave from the Court's order in *Neuberger I* while filing for expedited relief in that action.

Plaintiffs actions, here, resulted in exactly the sort of claim splitting the Third Circuit has long recognized is impermissible. *Walton*, 563 F. 2d at 70. Accordingly, the Court will exercise its discretion to hold that the duplicative Plaintiffs (those also named in *Neuberger I*) are dismissed from this action for duplicative litigation. *See Walton*, 563 F. 2d at 70. Having dismissed the

*Neuberger I* Plaintiffs, the remaining Plaintiffs are Bruce C. Smith and BKK Firearms ("Seller Plaintiffs").[4]

### B. Preliminary Injunction

Plaintiffs' motion, as evidenced by its Proposed Order, demands an injunction lasting a reasonable amount of time until two conditions are fulfilled: 1) that Defendants represent, by declaration, that "all the necessary personnel, systems, and infrastructure" have been implemented to ensure SS 1's scheme works; and 2) that Defendants submit a copy of a permit issued under SS 1's scheme. (D.I. 3 at 1-2). In their papers, both parties recognized that the Defendants submitted copies of permits issued; such that the second condition is now moot. (D.I. 20-B); (D.I. 29 at 4) (recognizing that the State has "very recently distributed some permits.").

#### 1. Likelihood of Success on the Merits

To succeed on their challenge, Plaintiffs must make a clear showing that they have a reasonable probability of success – *i.e.,* significantly better than negligible but not necessarily more likely than not. *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F. 4th 213, 218 (3d Cir. 2025) (citing *Reilly v. City of Harrisburg*, 959 F. 3d 173, 176, 179 (3d Cir. 2017)) (internal quotations omitted); *Mazurek v. Armstrong*, 520 U.S. at 972. The remaining Plaintiffs – the Seller Plaintiffs – have failed to meet that burden.

Seller Plaintiffs claim that because "the State has not put in place the infrastructure necessary" for an applicant to receive a permit, "or for the State itself to grant a permit," then SS 1 serves to operate as "a total ban on handguns" – which cannot survive scrutiny "under any standard." (D.I. 4 at 12) (citing *Heller*, 554 U.S. at 628-29). Specifically, as became clear in their reply brief and at oral argument, Plaintiffs argue 1) that three aspects of the SBI's guidelines

---

[4] Seller Plaintiffs will be directed to file an amended complaint that specifies the facts supporting their claims for relief.

implementing the law are improper regulations involving firearm training courses, which should have been promulgated according to Delaware's Administrative Procedures Act ("APA") and 2) that aspects of the permitting process – the fingerprinting and the helpline – are not working. (D.I. 29 at 4-7).

With respect to the former, Seller Plaintiffs seem to accept that the *content* of firearm training courses flow directly from the language of the statute. They argue, however, that the *additional* guidelines that SBI promulgated – that is, those made to implement "application and approval for firearm trainers" – are actually regulations improperly imposed under Delaware's Administrative Procedure Act ("APA"). (D.I. 4 at 12-14; D.I. 29 at 5-6). Plaintiffs contest sections IV.C, IV.D and IV.E of the SBI guidelines. These sections provide:

> C. Training courses must be approved by SBI prior to conducting training for a handgun qualified purchaser permit.
>
> D. Firearms instructors must be approved by SBI prior to instructing training for a handgun qualified purchaser permit.
>
> E. Firearms instructors must submit a completed application in the Permit to Purchase Firearms Instructor Portal to obtain approval as a certified firearms instructor. The following supporting documents must also be submitted:
>
>> 1. A copy of a valid firearms instructor certificate showing the expiration date.
>>
>> 2. The certificate must be from a nationally recognized organization that certifies instructors on firearms training or from a law enforcement agency that meets the Delaware POST standards for firearms instructors.
>>
>> 3. An instructor identification card
>>
>> 4. Training course syllabus.
>
> (D.I. 5 Exh. A at 3).

8

Seller Plaintiffs argue that these improper regulations result in the inability to "legally buy or sell a handgun in Delaware on the commencement date for enforcement" and create an "unlawful impediment to exercising a fundamental right." (D.I. 4 at 14); (D.I. 29 at 6). Although Plaintiffs' argument that these "guidelines" may be improper is not frivolous, it is also moot. Indeed, during oral argument, Defendants agreed to withdraw these guidelines. They then submitted a letter with accompanying declaration (D.I. 35; D.I. 36), representing that Delaware agrees to strike the complained-of firearms training course guidelines. The Court cannot, thus, find that Plaintiffs have established a reasonable expectation of success that the retention of these now withdrawn "guidelines" entitles them to relief.

Seller Plaintiffs' other complaints, regarding fingerprinting and the helpline, fare no better. First, the Court has no declaration or other evidence from the Seller Plaintiffs regarding these aspects of the State's infrastructure.[5] Moreover, the State's Supplemental Declaration provides substantial detail calling into question Plaintiffs' assertions. For example, it identifies the helpline hours and notes that they are "expected to expand" from typical business hours once SS 1 goes into effect. It also attests that a recent civilian applicant used the State's fingerprinting portal, then fielded a phone call from the SBI regarding his permit application, which was approved in 3 days. (D.I. 36 ¶¶ 14-20). None of the arguments put forth by Seller Plaintiffs meaningfully disputes that showing of workability. Consequently, the Court cannot say that they have made a "clear showing" that the State's infrastructure is *not* sufficient "to enable any eligible Delaware adult resident to readily apply for and obtain the required handgun qualified purchaser permit needed to buy or sell a handgun within the statutory thirty-day period for the State to issue such permits."

---

[5] One of the now dismissed *Neuberger I* plaintiffs submitted a declaration that he struggled to understand the State's fingerprinting requirements and to connect to an available phone helpline. (*E.g.*, D.I. 30 ¶¶ 15-20).

9

*Mazurek v. Armstrong*, 520 U.S. at 972; (D.I. 3 at 2). Accordingly, the Court finds the Seller Plaintiffs have failed to make a showing of likelihood of success on the merits.

### C. The Remaining Factors

Because the Court finds that Plaintiff has failed to demonstrate likelihood of success on the merits, it need not evaluate the other factors of the analysis: irreparable harm, balancing of the equites, and public interest. *See, e.g., S. Camden Citizens in Action*, 274 F. 3d at 777.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is denied.